J-S72010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KENNETH N. BAKER, | |
| Appellant | No. 152 WDA 2014 |

Appeal from the PCRA Order Entered January 20, 2014
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0002240-2010

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED NOVEMBER 21, 2014**

Appellant, Kenneth N. Baker, appeals *pro se* from the post-conviction court's January 20, 2014 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On appeal, Appellant raises eight issues for our review, the majority of which allege ineffective assistance of trial/sentencing counsel.  We have thoroughly reviewed the certified record, the briefs of the parties, and the applicable law.  Additionally, we have examined the thorough and well-crafted opinion of the Honorable Kim Tesla of the Court of Common Pleas of Beaver County.  We conclude that Judge Tesla's 21-page opinion accurately

_____

[*] Retired Senior Judge assigned to the Superior Court.

and thoughtfully disposes of the issues presented by Appellant.[1] Accordingly, we adopt his opinion as our own and affirm the order denying Appellant's PCRA petition on that basis.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2014

---

[1] However, Judge Tesla did not address Appellant's seventh issue, in which he argues that the PCRA court erred by failing "to acknowledge or address" the trial court's denial of his pretrial motions alleging that his counsel was ineffective and requesting a continuance to retain private counsel. **See** Appellant's Brief at 23-24. Judge Tesla did not address this claim because it was not specifically asserted in Appellant's *pro se* PCRA petition, or raised in his Pa.R.A.P. 1925(b) statement. **See** *Pro Se* Petition, 1/18/12; Rule 1925(b) Statement, 2/6/14. Accordingly, this issue is waived. **See Commonwealth v. Rainey**, 928 A.2d 215, 226 (Pa. 2007) (noting that issues not raised in a PCRA petition are waived and cannot be considered for the first time on appeal); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or raised in accordance with the provisions of this paragraph (b)(4) are waived.").

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
PENNSYLVANIA
CRIMINAL DIVISION – LAW

COMMONWEALTH OF PENNSYLVANIA,　　:

　　　　vs.　　　　　　　　　　　　　　:

KENNETH N. BAKER,　　　　　　　　:　　No. 2240 of 2010

　　　　　　　　Defendant.　　　　　:

## 1925(a) Opinion

Tesla, J.　　　　　　　　　　　　　　　　March 12, 2014

This Opinion is issued pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate

Procedure in support of this Court's January 7, 2014 Order denying Defendant Kenneth N.

Baker's Motion for Post Conviction Collateral Relief.

### Facts and Procedural History

The evidence and testimony presented at trial indicated that, on the evening of Saturday,

July 24, 2010, Karen Dreher attended her 30-year high school reunion with her cousin at the

Beaver Valley Country Club. T.T., at 61-64.[1] They stayed at the reunion until approximately

midnight, at which time they went to Li'l Joe's bar in Beaver Falls with some friends. Id. at 67-

68. At approximately 2:00 a.m., Ms. Dreher left the bar, and her cousin drove her to her home at

2207 7th Avenue in Beaver Falls. Id. at 68. Her cousin then watched as Ms. Dreher exited the

vehicle and entered her house. Id. at 71.

Upon entering the house, Ms. Dreher found her estranged boyfriend, the Defendant

Kenneth N. Baker (hereinafter, "Defendant"), in a back room of her house.[2] Id. at 95, 110-11.

---

[1] The Court notes that Ms. Dreher, who was the victim of the underlying crimes in the above-captioned matter, suffered a stroke in 2004 and, as a result, has had difficulty communicating verbally since that time.
[2] Other testimony presented at trial suggested that Ms. Dreher let Defendant into her house. Id. at 488.

She indicated to Defendant that he startled her and that she was going upstairs to get undressed and to go to sleep. Id. at 111-12. According to Ms. Dreher, Defendant then followed her upstairs and began beating her, pulling her hair out, tearing her nightgown, and attempting to choke her "to death." Id. at 114, 126, 161. She testified that she felt as though she was dying as he choked her. Id. at 114. Ms. Dreher also testified that, after beating her, Defendant inserted a metal tube into her anus and had sex with her against her will. Id. at 115. Ms. Dreher indicated that, after this abuse took place, Defendant made her bathe and wash her clothes. Id. at 115-16. According to Ms. Dreher, Defendant prevented her from leaving the house or calling for help until shortly before noon on Monday, July 26, 2010, after he left. Id. at 118. Once Defendant left the house, Ms. Dreher escaped to the residence of her neighbor Vernon Jeter, and the police and paramedics were called. Id. at 118-19. Ms. Dreher was then transported to the Heritage Valley Medical Center where she was examined and treated for her injuries. Id. at 119-20.

At approximately 1:30 p.m. on July 26, 2010, Detective Kevin Burau of the Beaver Falls Police Department reported to the Heritage Valley Medical Center to speak with Ms. Dreher. T.T., at 318-19. Upon arrival, Detective Burau was told by Ms. Dreher that she was physically and sexually assaulted by Defendant in her home after returning to the residence early Sunday morning, July 25, 2010. Id. at 320-24. While speaking to Ms. Dreher, Detective Burau observed that she had bruises, scratches, and swelling on her face and neck and that she was visibly shaken and in pain. Id. at 320, 323. Following this discussion, Detective Burau obtained the sexual assault evidence collection kit that was assembled in connection with this case. Id. at 325. Detective Burau then secured a search warrant for Ms. Dreher's residence to collect additional evidence relating to this matter. Id. at 325-26.

2

On July 27, 2010, Detective Burau filed a criminal complaint charging Defendant with one count of aggravated assault, one count of burglary, one count of criminal trespass, two counts of rape, two counts of involuntary deviate sexual intercourse, one count of sexual assault, three counts of aggravated indecent assault, three counts of indecent assault, two counts of unlawful restraint, two counts of simple assault, one count of recklessly endangering another person, and one count of harassment. A warrant was issued for Defendant's arrest, and, on August 12, 2010, Defendant was confined in the Beaver County Jail. Approximately one month later, Defendant posted bail and was released.

Following a preliminary hearing on November 5, 2010, the charges were held for Court. On November 29, 2010, the Commonwealth filed an Information charging Defendant with the above-listed offenses. Initially, Defendant was scheduled for trial during the January 2011 trial term; however, on January 27, 2011, defense attorney Stephen D. Colafella withdrew his appearance on behalf of Defendant because of Defendant's inability to meet his financial obligations to Mr. Colafella. As a result, Defendant's trial was continued to the March 2011 trial term. Defendant subsequently violated the requirements of his bond by failing to provide notice of his change of address, and he failed to appear at a Criminal Judicial Pre-Trial Conference scheduled for February 15, 2011. As a result, a bench warrant was issued on February 16, 2011, and Defendant was again incarcerated on February 28, 2011.

On March 7, 2011, Assistant Public Defender Thomas Kurt Fuchel entered his appearance on behalf of Defendant, and the trial was continued to the May 2011 trial term in order to provide time for defense counsel to prepare. On March 30, 2011, Defendant filed a *pro se* Motion for Conflicts Counsel, alleging that Attorney Fuchel was negotiating a plea agreement on behalf of Defendant without having met with him. Defendant later filed a *pro se* Motion for

Ineffective Counsel as well as a *pro se* Motion for Conflict of Interest, in which Defendant alleges that prosecuting attorney Frank Martocci represented Defendant in a 1998 case. These motions were forwarded to Attorney Fuchel in accordance with Rule 576(A)(4) of the Pennsylvania Rules of Criminal Procedure, and no further action was taken on them.

On May 10, 2011, the trial was again continued to the July 2011 trial term because Defendant was waiting on DNA analysis and discovery photos. On July 12, 2011, the Commonwealth filed an Amended Information which included one count each of aggravated assault (18 Pa.C.S.A. § 2702(a)(1)), criminal trespass (18 Pa.C.S.A. § 3503(a)(1)(i)), rape (18 Pa.C.S.A. § 3121(a)(1)), involuntary deviate sexual intercourse (18 Pa.C.S.A. § 3123(a)(1)), aggravated indecent assault (18 Pa.C.S.A. § 3125(a)(2)), indecent assault (18 Pa.C.S.A. § 3126(a)(2)), unlawful restraint (18 Pa.C.S.A. § 2902(a)(1)), simple assault (18 Pa.C.S.A. § 2701(a)(1)), and harassment (18 Pa.C.S.A. § 2709(a)(1)).

Defendant's trial took place on July 13, 14, and 15, 2011. Following trial, the jury returned a verdict of not guilty on the charge of criminal trespass and a verdict of guilty on the charges of aggravated assault, rape, involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, unlawful restraint, and simple assault. The Court also found Defendant guilty of the summary offense of harassment.

On July 18, 2011, the Court set a date for sentencing and ordered that Defendant undergo a Sexually Violent Predator Assessment. On the same date, Defendant filed a *pro se* Notice of Appeal and Request for Transcripts which were forwarded to Attorney Fuchel. Defendant submitted a similar motion on September 1, 2011 which was also forwarded to Attorney Fuchel.

Defendant's Assessment was conducted on September 23, 2011 by Julia L. Lindemuth, a member of the Pennsylvania Sexual Offenders Assessment Board. After the assessment, the

4

Commonwealth requested a hearing to determine Defendant's status as a sexually violent predator. On September 27, 2011, prior to his sentencing, Defendant again filed a *pro se* Motion for Conflicts Counsel which was also forwarded to the Public Defender's Office. No action was taken on his Motion until the sentencing hearing on October 25, 2011.

During the sentencing hearing, Defendant was represented by Assistant Public Defender Ronald Rojas, who was appointed to replace Attorney Fuchel after he left the Public Defender's Office. Through his *pro se* Motion for Conflicts Counsel, Defendant indicated that he was seeking to raise issues of ineffective assistance of counsel relating to Attorney Fuchel's representation of Defendant during trial. Citing Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002), the Court refrained from addressing Defendant's ineffectiveness claims at the sentencing hearing, stating that such issues should not be raised until collateral review. The Court then heard testimony from Ms. Lindemuth and Defendant on the issue of Defendant's status as a sexually violent predator. Following the testimony and arguments, the Court found that Defendant has anti-social personality disorder, causing him to sexually offend Ms. Dreher and making it likely that Defendant will reoffend. As a result, the Court concluded that Defendant should be classified as a sexually violent predator. The Court also sentenced Defendant to a term of incarceration of 24 and one-half years to 49 years based on his convictions for aggravated assault, rape, involuntary deviate sexual intercourse, and unlawful restraint.

On November 2, 2011, Defendant, through Attorney Rojas, filed a Post Sentence Motion challenging the weight and sufficiency of the evidence and requesting a new trial or dismissal of the charges. The Court scheduled oral argument on the Motion for January 30, 2012. During the following months, Defendant filed a *pro se* Motion to Modify and Reduce Sentence, two *pro se*

5

Petitions to Proceed In Forma Pauperis, a *pro se* Notice of Appeal, a *pro se* motion alleging ineffective assistance of counsel, a *pro se* Petition for Nunc Pro Tunc – Rule, a *pro se* Application for Credit Time, and a *pro se* Motion for Post Conviction Collateral Relief. No action was taken on these motions other than to forward them to Attorney Rojas. After hearing oral argument on Defendant's Post Sentence Motion, the Court denied the Motion in an Opinion dated February 15, 2012. On March 14, 2012, Defendant appealed, and on December 3, 2012, the Superior Court of Pennsylvania affirmed the judgment of sentence.

Upon receipt of Defendant's *pro se* Motion for Post Conviction Collateral Relief that was filed on January 18, 2012, the Court appointed Attorney Steven Valsamidis to represent Defendant in these collateral proceedings. Attorney Valsamidis subsequently requested and was granted leave to withdraw from this matter due to a conflict of interest. As a result, on May 29, 2013, Attorney Sherri Hurst was appointed to represent Defendant in these collateral proceedings. After review of the record in this matter and the applicable law, Attorney Hurst filed a no-merit letter, concluding that the issues raised by Defendant lack merit and that no other issues could be raised on Defendant's behalf that would make him eligible for relief. On November 25, 2013, Defendant filed a *pro se* Notice of Appeal. The Notice was not docketed or forwarded to the Superior Court because Defendant failed to include the proper proof of service and filing fee. On December 6, 2013, the Court granted Attorney Hurst leave to withdraw from this matter and provided Defendant with 21 days to show cause why his Motion for Post Conviction Collateral Relief should not be dismissed. On December 16, 2013, Defendant filed a document entitled Intention to Not Dismiss Petition for Relief Under P.C.R.A. After review of this document, the Court dismissed Defendant's Motion for Post Conviction Collateral Relief on

6

January 7, 2014. In doing so, the Court incorporated the reasoning specified in Attorney Hurst's no merit letter.

On January 20, 2014, Defendant filed the instant *pro se* Notice of Appeal. The Court subsequently granted Defendant leave to proceed in forma pauperis and directed Defendant to file a Statement of Errors Complained of on Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On February 6, 2014, Defendant filed a *pro se* Pa.R.A.P. 1925(b) Statement raising 13 allegations of error. After review of Defendant's Statement, the Court concludes that his allegations of error are without merit, and the Court provides the following explanation in support of its conclusion.

## Analysis

In his 1925(b) Statement, Defendant raises as allegations of error many of the claims contained in his Motion for Post Conviction Collateral Relief and his Intention to Not Dismiss Petition for Relief Under P.C.R.A. To be eligible for relief under the Commonwealth of Pennsylvania's Post Conviction Relief Act (hereinafter the "PCRA"), the petitioner must satisfy four general requirements. 42 Pa.C.S.A. §§ 9541-9546. First, the petitioner must have been convicted of a crime under Pennsylvania law and subsequently sentenced to either incarceration or probation. 42 Pa.C.S. § 9543(a)(1). Second, the conviction and sentence must have resulted from at least one of the errors and/or violations elucidated in § 9543(a)(2) of the PCRA. Third, the allegation of error must not have been previously litigated or waived by the petitioner. Id. at § 9543(a)(3). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." Id. at § 9544(a)(2). A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction

7

proceeding." Id. at § 9544(b). Finally, the petitioner must demonstrate that the failure to litigate the claim could not have been "the result of any rational, strategic or tactical decision by counsel." Id. at § 9543(a)(4).

Many of the allegations of error raised by Defendant constitute claims of ineffective assistance of counsel. The PCRA permits a petitioner to seek post-conviction relief for a claim of the ineffective assistance of trial counsel. 42 Pa.C.S. § 9543(a)(2)(ii). Under Pennsylvania law, there is a basic presumption that counsel acted effectively. Commonwealth v. Jones, 942 A.2d 903, 906 (Pa. Super. 2008). Thus, the burden rests on the petitioner to demonstrate ineffectiveness. Id. To do so, the petitioner "must plead and prove by a preponderance of evidence that his conviction resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reasonable adjudication of guilt or innocence could have taken place." Commonwealth v. Granberry, 644 A.2d 204, 207 (Pa. Super. 1994) (citing Commonwealth v. Dukeman, 565 A.2d 1204 (Pa. Super. 1989)).

Pennsylvania courts apply a three-prong test to determine whether the petitioner has established ineffectiveness of counsel. Commonwealth v. Sneed, 899 A.2d 1067, 1076 (Pa. 2006). The petitioner must first demonstrate that the issue underlying the claim has arguable merit. Id. Next, if the claim does have arguable merit, it must then be determined whether counsel's acts or omissions had some reasonable basis designed to serve the interests of his client. Id. "Once it has been determined that the particular course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests, counsel will be deemed constitutionally effective." Commonwealth v. Miller, 431 A.2d 233, 235 (Pa. 1981) (citing Commonwealth ex rel. Washington v. Maroney, 235 A.2d 349 (Pa. 1978)). If a reasonable basis

8

for counsel's actions cannot be found, the petitioner must show that the ineffectiveness of counsel resulted in prejudice to him. Sneed, *supra* at 1076. Failure to satisfy any of the three prongs will require rejection of the claim. Commonwealth v. Hammond, 953 A.2d 544, 556 (Pa. Super. 2008).

Defendant's first allegation of error contained in his Rule 1925(b) Statement is as follows:

> Trial counsel Kurt Fuchel gave me false information by stating [sic] that victim Karen Dreher, [sic] phone records were no longer in existence or defendant [sic] phone records. Which [sic] was untrue because both phone records were still active. If prior counsel would have been subpoena [sic] phone records would of [sic] shown that Karen Dreher, had lied under oath and her testimony presented at trial to shock [sic] one's sense of justice.

Def.'s Pa.R.A.P. 1925(b) Statement. During cross examination, Attorney Fuchel asked Ms. Dreher whether Defendant had called her after he left her residence on Monday morning. T.T., at 138. Ms. Dreher responded in the negative, stating "Huh-uh." Id. Defendant alleges that, in doing so, Ms. Dreher lied under oath.

Defendant does not offer any explanation as to why this evidence would have been helpful to his defense other than to suggest that it may have served to impeach the credibility of Ms. Dreher. Although Attorney Fuchel chose not to impeach Ms. Dreher using these alleged phone records, Attorney Fuchel did call into question Ms. Dreher's credibility by other means. For example, Attorney Fuchel questioned whether Ms. Dreher's testimony was motivated by the fact that Defendant had a new girlfriend. Id. at 147. Attorney Fuchel also caused Ms. Dreher to admit that Defendant never previously physically abused her during their 16-year relationship. Id. at 140. Based on Attorney Fuchel's cross-examination, Ms. Dreher's credibility was called into question, and the jury resolved issues of credibility in favor of the Commonwealth and its witnesses. As Attorney Hurst indicated in her no-merit letter, the credibility issue was addressed

9

and litigated through Defendant's direct appeal. Because the issue was previously litigated, Defendant was not eligible for relief pursuant to 42 Pa.C.S. § 9543(a)(3).

Even if Defendant was eligible for relief based on this claim, Defendant must establish that Attorney Fuchel's failure to subpoena and impeach Ms. Dreher with the phone records resulted in prejudice to him. "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." Commonwealth v. Pierce, 786 A.2d 203, 213 (Pa. 2001) (citing Commonwealth v. Kimball, 724 A.2d 326, 332 (Pa. 1999)). "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" Commonwealth v. Rathfon, 2006 Pa. Super. 106, 899 A.2d 365, 370 (2006).

If Attorney Fuchel had subpoenaed the phone records and, in doing so, demonstrated that there was a phone call placed between Defendant and Ms. Dreher at some point on the morning of July 26, 2010, it cannot be said that this would have undermined confidence in the outcome of the trial. Ms. Dreher consistently provided the same explanation for her injuries since she escaped from her residence on the morning of July 26, 2010. Her account was supported by additional evidence presented by the Commonwealth. For example, multiple witnesses, including Defendant, testified that Defendant was present at Ms. Dreher's residence at the approximate time that these crimes occurred. Dr. Maenza testified that, based on his examination of Ms. Dreher, he believed that Ms. Dreher's injuries were consistent with her account of how they were caused. T.T, at 302. Alex Glessner testified that Ms. Dreher's nightgown contained semen stains that matched Defendant's DNA profile. Id. at 399. In light of the totality of the evidence presented, the Court concludes that Defendant failed to demonstrate a reasonable probability that, but for Attorney Fuchel's alleged error, the outcome of the trial

10

would have been different. Because Defendant failed to establish prejudice resulting from Attorney Fuchel's alleged error, Defendant was not entitled to relief on this claim.

Defendant's next issue is that Attorney Fuchel did not provide him with all of the discovery material, specifically Commonwealth Exhibits 13 and 14.[3] As Attorney Hurst points out in her no-merit letter, Defendant had the following exchange with Attorney Fuchel during direct examination:

> Q:   And I had given you copies of the discovery in the case and everything else; correct?
>
> A:   Yes.

T.T., at 574. Based on this testimony, it appears that Defendant did receive copies of all of the discovery in this matter. As a result, his claim that Attorney Fuchel did not provide him with Commonwealth Exhibits 13 and 14 is without merit. In addition, assuming Attorney Fuchel did not reveal these discovery materials, Defendant offers no explanation as to how it would have changed the outcome of these proceedings if he had done so. Therefore, Defendant was not entitled to PCRA relief based on this allegation of ineffectiveness of counsel.

Defendant's next issue is that Attorney Fuchel failed to retain the services of a forensic medical expert, a psychologist, and a private investigator. Initially, the Court notes that Defendant did not raise this issue in his Motion for Post Conviction Collateral Relief or in his Intention to Not Dismiss Petition for Relief under P.C.R.A. As a result, this issue is deemed waived. Commonwealth v. Potter, 58 A.3d 752, 753 (Pa. 2012); Commonwealth v. Jones, 590 Pa. 202, 219, 912 A.2d 268, 278 (2006).

In his Motion for Post Conviction Collateral Relief, Defendant did make the general argument that the failure to call a witness whose testimony would have been helpful to the

---

[3] Commonwealth Exhibits 13 and 14 are pictures of Ms. Dreher's back, chest, and neck that were taken in the hospital following the assault.

11

defense constitutes ineffective assistance of counsel. Assuming Defendant was referring to the medical expert, psychologist, and private investigator when he made this argument and that the issue is not waived, his claim is still without merit because he is unable to establish the prejudice prong of an ineffectiveness claim. The Superior Court of Pennsylvania recently stated:

> To satisfy the prejudice prong of this test when raising a claim of ineffectiveness for the failure to call a potential witness at trial, our Supreme Court has instructed that the PCRA petitioner must establish that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Wantz, 2014 Pa. Super. 6, --- A.3d ---- (2014). (citing Commonwealth v. Sneed, 616 Pa. 1, 22-23, 45 A.3d 1096, 1108-09 (2012)). Nothing in the record suggests that Defendant could establish any of these five requirements. Defendant was unable to even identify the witnesses he wanted Attorney Fuchel to call. A generic request for expert witnesses and private investigators cannot alone establish a claim of ineffective assistance of counsel.

Furthermore, evidence of record suggests that Defendant notified Attorney Fuchel of his desired witnesses and that Attorney Fuchel conducted a proper investigation. In her no-merit letter, Attorney Hurst cites the following exchange between Attorney Fuchel and the Court that took place prior to jury selection:

> MR. FUCHEL: ... I did get a list of people that Mr. Baker wanted to have as witnesses. Several of them we could not get ahold of or contact or find. A couple, a few of them we got ahold of and could find nothing within their knowledge base that would add to the case, and we do have two witnesses that are coming because they have some information relevant to the case.

> THE COURT: So, you have reviewed that list, investigated it, and did your efforts to be prepared for trial?

> MR. FUCHEL: Yes, sir.

12

N.T., 7/12/11, at 12-13. Based on this exchange, it appears that Attorney Fuchel reviewed Defendant's list of witnesses and subpoenaed only those witnesses that were both available and helpful to the case. In doing so, the Court concludes that Attorney Fuchel was constitutionally effective.

With respect to his next issue, Defendant states that Attorney Fuchel was ineffective for "not presenting photo's [sic] of the crime sceen [sic] of evidence that the crime sceen [sic] was stage [sic] and tamper [sic] with Exhibit #1 was move in two different photo's [sic][.]" Def.'s Pa.R.A.P. 1925(b) Statement. Defendant elaborates in his Intention to Not Dismiss Petition for Relief Under P.C.R.A., stating "Prior counsel's demonstrate prejudice due to ineffective of counsel [sic] to not show photo's [sic] of crime sceen [sic] that would of [sic] shown that exhibit #1 was move [sic] in two serperate [sic] photo's [sic] Exhibit #1 in one photo was on the night stand and in another photo Exhibit #1 was on the bed." Def.'s Pa.R.Crim.P. 907 Statement. Defendant seems to suggest that Attorney Fuchel was ineffective for failing to point out that Commonwealth's Exhibit 1 was at one location in one photograph of the crime scene and at another location in a different photograph of the crime scene.

Commonwealth's Exhibit 1 is the high school reunion program that Ms. Dreher received when she attended the reunion on the evening of Saturday, July 24, 2010. In Commonwealth's Exhibit 40, which is a photograph that depicts part of Ms. Dreher's bedroom, the program can be seen on her bed. It appears that the program cannot be seen in any of the other photographs of parts of Ms. Dreher's bedroom that were admitted as exhibits. Commonwealth Exhibit 42 is also a photograph that displays, in part, Ms. Dreher's bedroom night stand, but the program does not appear to be present in that photograph. After reviewing the crime scene photographs, it is unclear to the Court whether the program was moved. Nevertheless, this claim is without merit.

13

Defendant fails to explain how the movement of the high school reunion program establishes that the crime scene was tampered with or staged. Defendant also fails to explain how raising this point would have changed the outcome of his trial. Having failed to show that this claim has arguable merit or that Defendant was prejudiced by Attorney Fuchel's alleged inaction, Defendant was not entitled to PCRA relief based on this argument.

Defendant's next argument is that Attorney Fuchel was ineffective for failing to conduct a bite mark analysis on him and Ms. Dreher. According to Defendant, Ms. Dreher had bite marks on her following the attack. Defendant also points out that his left front tooth has been missing since 1985. Defendant claims that Attorney Fuchel should have compared the alleged bite marks on Ms. Dreher to Defendant's bite impression. He asserts that, if the marks did not match, it would prove his innocence.

As Attorney Hurst points out in her no-merit letter, Dr. Maenza testified that, although the bruise on Ms. Dreher had the characteristics of a bite mark, he could not say with certainty that the bruise was caused by biting. T.T., at 306-07. Since it could not be established that the bruise was a bite mark, it is unlikely that Defendant could have demonstrated that the bruise was caused by someone else biting Ms. Dreher. Furthermore, Defendant does not indicate how he would go about proving this point. Presumably, Defendant would require some type of medical testimony, but Defendant does not identify a witness that could support his theory. Even if Defendant was successful in establishing that he did not cause the bruise, there still remained substantial evidence to support the jury's verdict. Therefore, Defendant was not entitled to PCRA relief based on this claim.

Defendant's next claim of error is that Attorney Fuchel failed to object to the Commonwealth referring to Defendant as a rapist in its opening statement and a coward in its

14

closing argument. During the Commonwealth's opening statement, Assistant District Attorney

Martocci stated as follows:

> And I think then the ultimate effect of a rape upon a person is that when a rapist, like the Defendant, commits this type of act against Karen, that act is intended to strip away her basic human dignity....
>
> We are going to prove through the evidence that that man, that rapist, did do all of those things.

T.T., at 44-45. During the Commonwealth's closing argument, Assistant District Attorney

Martocci made the following comments:

> This man, ladies and gentlemen, is a coward. He is a rapist. He took advantage of a situation that he knew he could, because of the victim that he chose. And I want you to also consider that when you go back to deliberate because he stayed in her house in the dark until she got home. If he had issues with their relationship and if he was not satisfied with it, a man goes and has a civil discussion, a talk. That's what men do. Cowards, like the Defendant, do what he did, break into a house, lie in wait, attack an innocent person. That's why he's the worst at breaking up, because he's a coward. That's why he strings people along in what he does, because he's a coward.

Id. at 685. Defendant claims Attorney Fuchel was ineffective for failing to object to these

comments.

The Supreme Court of Pennsylvania has recently outlined the relevant law regarding such

claims of ineffectiveness of counsel.

> [A] claim of ineffective assistance grounded in counsel's failure to object to a prosecutor's comments may succeed when the petitioner demonstrates that the prosecutor's comments violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is the fairness of the trial, not the culpability of the prosecutor.
>
> A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to

> a prosecutor's comment must be evaluated in the context in which the comment was made....
>
> Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial[.] Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

Commonwealth v. Elliott, 80 A.3d 415, 443 (Pa. 2013) (citing Commonwealth v. Spotz, 616 Pa. 164, 47 A.3d 63, 97-98 (2012)). With respect to Defendant's claim regarding being called a rapist, the Superior Court has found that, when the defendant is being tried for rape, such a comment is permissible and trial counsel is not ineffective for failing to object to it. Commonwealth v. Dozier, 294 Pa. Super. 249, 255-56, 439 A.2d 1185, 1188-89 (1982). Similarly, calling Defendant a coward is not improper, especially in the absence of any showing of prejudice. See Commonwealth v. Fears, --- A.3d ----, 2014 WL 641931 (Pa. 2014) (trial counsel not ineffective for failing to object to prosecutor calling the appellant a "hunter" and a "predator" where the appellant failed to show that the fact-finder was improperly influenced). Because neither of these remarks appear to have prejudiced the jurors or violated Defendant's constitutionally or statutorily protected rights, Defendant was not entitled to PCRA relief based on this claim.

Defendant's next allegation of error is that Attorney Rojas did not inform Defendant that he was representing him until he first made contact with him at the sentencing hearing. Between trial and sentencing, Attorney Fuchel left the Beaver County Public Defender's Office, and, as a result, Assistant Public Defender Rojas was appointed to represent Defendant. At the beginning of Defendant's sentencing hearing, Attorney Rojas told the Court that he "was not able to sit down with [Defendant] and adequately prepare for this sentencing hearing[.]" N.T., 10/25/11, at 5. Later, Attorney Rojas clarified through questioning of Defendant that he was unable to

16

prepare with Defendant for the sentencing because Defendant was uncooperative. Id. at 8-9. Attorney Rojas questioned Defendant as follows:

> Q: And again, after I advised you who I was, asked you some brief background questions, you terminated the interview at that point?
>
> A: Yes.

Id. at 9. Despite his initial unwillingness to cooperate with Attorney Rojas, Defendant eventually made clear during the hearing that he needed the assistance of Attorney Rojas and that he wished to be represented by him. Id. at 15. As a result, Attorney Rojas indicated that he would do his best to ensure that Defendant receives adequate representation. Id. at 16. He also requested that the record be kept open at the end of the proceeding so that he could supplement the record with anything he or Defendant felt was necessary. Id. at 16-17. Attorney Rojas then proceeded to effectively represent Defendant during the assessment and sentencing hearing.

By claiming that it was error for Attorney Rojas to first make contact with Defendant at the sentencing hearing, the Court assumes that Defendant is suggesting that Attorney Rojas provided ineffective assistance of counsel because of the little time he spent preparing for the sentencing with Defendant. The Superior Court has made clear that the "length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation." Commonwealth v. Ellis, 700 A.2d 948, 960 (Pa. Super. 1997). A counsel's alleged failure to meet with a client often enough in preparation for trial does not constitute ineffective assistance, absent additional evidence of inadequate preparation. Commonwealth v. Howard, 1999 Pa. Super. 113, 732 A.2d 1213, 1215 (1999). Defendant offers no indication that additional evidence exists of Attorney Rojas's inadequate preparation. In fact, Defendant raises no allegations of error with respect to Attorney Rojas's actual representation of him during the assessment and sentencing hearing, which suggests that Defendant was satisfied with the

17

representation during the hearing despite the alleged lack of preparation. Therefore, the Court concludes that Defendant was not entitled to PCRA relief based on this issue.

Defendant's next allegation of error is that he was represented by one member of the Public Defender's Office in Attorney Rojas while he was raising claims of ineffective assistance of counsel against a former member of the Public Defender's Office in Attorney Fuchel. During the sentencing hearing and in some of his *pro se* pleadings, Defendant cited the case of Commonwealth v. Dancer, 460 Pa. 95, 100, 331 A.2d 435, 438 (1975) and argued that he could not be represented by an attorney from the Public Defender's Office while he was alleging that an attorney from the same office was ineffective. N.T., 10/25/11, at 9, 15.

"As a general rule, a public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence, is deemed to have asserted a claim of his or her own ineffectiveness." In re K.A.T., Jr., 2013 Pa. Super. 137, 69 A.3d 691, 699 (2013) (citing Commonwealth v. Ciptak, 542 Pa. 112, 665 A.2d 1161, 1161-62 (1995)). In this matter, however, a public defender did not argue the ineffectiveness of another member of the same public defender's office. Defendant raised *pro se* claims of ineffectiveness against Attorney Fuchel, but Attorney Rojas raised no such claims while he represented Defendant. Because hybrid representation is not permitted, the Court did not consider Defendant's *pro se* claims. Commonwealth v. Ellis, 534 Pa. 176, 626 A.2d 1137 (1993). Furthermore, the Court refrained from addressing these claims because issues such as ineffectiveness of counsel should generally not be raised until collateral review. Grant, 813 A.2d 726. Therefore, no issues of ineffectiveness of counsel were raised or addressed during sentencing or direct appeal, and, as a result, no conflict existed as Defendant alleges. Accordingly, Defendant was not entitled to PCRA relief based on this claim.

18

Defendant's next allegation of error is that there is no record of Attorney Rojas entering his appearance on behalf of Defendant. While Defendant is correct that Attorney Rojas never entered his appearance on the criminal docket, the Public Defender's Office entered its appearance through Attorney Fuchel on March 7, 2011 and represented him through his direct appeal. The fact that Attorney Rojas did not enter his appearance personally was of no consequence. Defendant suffered no prejudice as a result of this omission. Therefore, the Court concludes that Defendant was not entitled to PCRA relief based on this claim.

Defendant's next allegation of error is that Attorney Rojas filed an appeal and post-sentence motion without speaking with Defendant about issues that needed to be raised. As indicated above, a counsel's alleged failure to meet with a client often enough does not constitute ineffective assistance, absent additional evidence of inadequate preparation. Howard, 732 A.2d at 1215. Furthermore, Defendant fails to specify what issues, other than those argued by Attorney Rojas, should have been raised in the Post Sentence Motion. If Defendant desired Attorney Rojas to raise the claims Defendant now raises on appeal, the Court asserts that these issues are without merit, and an attorney should not be deemed ineffective for failing to raise a meritless claim. Commonwealth v. Saranchak, 581 Pa. 490, 866 A.2d 292 (2005). If Defendant desired Attorney Rojas to raise other issues, Defendant should have included them in his Motion for Post Conviction Collateral Relief or his Intention to Not Dismiss Petition for Relief Under P.C.R.A. Because he failed to do so, any such issues are waived.

In his final three allegations of error, Defendant asserts that Attorney Hurst should have pursued the following issues: (1) the possibility that the crime scene was tampered with or staged; (2) investigation of phone records could have shown that Ms. Dreher contacted

Defendant on the morning he left her house;[4] and (3) Defendant's teeth do not match the bite mark on Ms. Dreher. These three issues were previously addressed in this Opinion and found to be without merit. Attorney Hurst's decision not to pursue meritless issues cannot be considered ineffective assistance of counsel or otherwise erroneous. Saranchak, 866 A.2d 292.

In addition to the issues raised in his 1925(b) Statement, Defendant raises other issues in his Motion for Post Conviction Collateral Relief and Intention to Not Dismiss Petition for Relief Under P.C.R.A. that should be addressed. Defendant asserts that Attorney Fuchel selected the jury without Defendant's consent, and, after this was reported to the Court, Defendant was denied the right to re-pick without any reason. Attorney Hurst addressed this issue in her no-merit letter, and the Court adopted the reasoning set forth therein. For purposes of this Opinion, the Court notes that Defendant was present for jury selection and that he did participate in the selection process. To the extent that Defendant was not involved in the selection process, it was a result of his own unwillingness to work with Attorney Fuchel. Defendant alleges no other defect with respect to voir dire. Therefore, Defendant was not entitled to select another jury.

Defendant also claims that he "was denied the right to know about appeling [sic] my sentence[.]" In paragraph two of the Court's February 15, 2012 Order denying Defendant's Post Sentence Motion, the Court wrote "Defendant is advised of his right to appeal from this Order to the Superior Court of Pennsylvania within thirty (30) days of this date." Through counsel, Defendant proceeded to appeal to the Superior Court. Accordingly, this issue is clearly without merit.

---

[4] The Court notes that this issue was not raised in Defendant's Intention to Not Dismiss Petition for Relief Under P.C.R.A. and is, therefore, waived. Potter, 58 A.3d at 753; Jones, 912 A.2d at 278.

20

Finally, Defendant raised other issues at various times throughout these proceedings. Defendant failed to include these issues in his 1925(b) Statement. Therefore, any such issues are waived. Pa.R.A.P. 1925(b)(4)(vii); Commonwealth v. Diamond, 83 A.2d 119, 136 (Pa. 2013).

**Conclusion**

Based on the foregoing reasons, the Court concludes that the issues Defendant raises are without merit. Therefore, the Court respectfully submits that the Court's decision to dismiss Defendant's Motion for Post Conviction Collateral Relief should be affirmed and that Defendant's appeal should be denied. The Beaver County Clerk of Courts is hereby directed to file the record of proceedings in this case with the Superior Court of Pennsylvania.

BY THE COURT,

_____
Kim Tesla, J.